# **<u>EXHIBIT 7</u>**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CRIMINAL DIVISION**

CR-504

DEC 1 1 2006

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff-Respondent | ) | Post-Conviction |
| | ) | |
| v. | ) | 96 CR 7614 |
| | ) | |
| MURRAY HOOPER, | ) | Hon. Lawrence Fox, |
| | ) | Judge Presiding. |
| Defendant-Petitioner. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner, Murray Hooper (hereinafter "petitioner"), seeks post-conviction relief from the judgment of conviction entered against him on August 24, 1981. Following a jury trial, petitioner was found guilty of three counts of armed robbery (Ill. Rev. Stat. 1979, ch 38, par. 18—2), three counts aggravated kidnapping (Ill. Rev. Stat. 1979, ch. 38, par. 10 – 2(a)(3)), and three counts of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9 – 1(a)(1)). After a hearing on the question of the imposition of the death penalty, (Ill. Rev. Stat. 1979, ch. 38, par. 9 – 1(d)), petitioner was subsequently sentenced to death on the murder convictions. Petitioner was also sentenced to concurrent terms of 60 years for each of the three counts of armed robbery and 60 years for each of the three counts of aggravated kidnapping. Petitioner's sentence for aggravated kidnapping was subsequently reduced to 15 years for each count. His death sentence was ultimately commuted to life in prison by then governor of Illinois George H. Ryan on January 10, 2003.

As grounds for post-conviction relief, petitioner claims (1) the trial judge practiced compensatory bias against him both at trial and at a subsequent *Batson*

1

C C -4120

proceeding in violation of his due process right to a fair trial, (2) the trial judge's extensive history of corruption deprived petitioner of a fair trial, (3) racial discrimination in the jury selection entitles petitioner to a new trial, (4) his confessions should have been suppressed because he was denied his right to counsel, (5) the State committed a *Brady* violation by failing to disclose evidence probative of petitioner's claim that his right to counsel was violated, (6) his confessions should have been suppressed because of evidence that they were coerced, (7) and (8) he was denied effective assistance of trial counsel, (9) the State committed a *Brady* violation by failing to disclose information that the trial judge was corrupt, (10) the State's conduct impeded his ability to adequately prepare and present a defense at trial, and (11) the cumulative effect of the State's conduct and his ineffective assistance of counsel deprived him of his due process right to a fair trial.

## BACKGROUND

Both petitioner's criminal history and the fact of the present conviction are set forth at length in numerous opinions and filings in Illinois and Arizona state and federal courts. As a result, only those facts pertinent to this instant proceeding shall be discussed. On November 12, 1980, Petitioner, Roger Collins and William Bracey committed the offenses of armed robbery, aggravated kidnapping and murder when they killed Frederick Lacey, R.C. Pettigrew, and Richard Holliman. On the morning of November 13, 1980, the three victims were found dead from gunshot wounds under a viaduct at Roosevelt Road and Clark Street in Chicago. Holliman was found in the back seat of a red Oldsmobile, his hands bound, and with three bullet wounds in the chest and one in the back of his neck. Lacey, who as found lying on the ground outside the driver's

C 4121

side of the automobile, had been shot in the back of the head. Pettigrew was lying under the front bumper with rope and cloth tied around his wrists. He had bullet wounds in the face, chest and leg, and four shotgun wounds in his back.

Petitioner and codefendant Bracy thereafter traveled to Phoenix, Arizona, where they were picked up at the airport by Robert Cruz and Arnold Merill. Cruz and Merrill were business associates at the time who were planning to take over an interest in a company called Graphic Dimensions, a successful printing business in the area. Pat Redmond and Ron Lukezic were partners at Graphic Dimensions and at the time refused to do business with Cruz and Merrill.

On New Year's Eve, 1980, petitioner, Bracy, and Ed McCall, went to the Redmond home and forced their way in at gunpoint. Pat Remond, his wife Marilyn, and Marilyn Redmond's mother, Helen Phelps, were all present. Bracy, petitioner and McCall eventually herded the family into one room where they bound, gagged, and robbed them. Afterwards, the three men shot each victim in the heard and slashed Pat Redmond's throat. Pat Redmond and Mrs. Phelps died from their wounds, but Marilyn Redmond survived.

The presiding judge at petitioner's trial for the Illinois murders was Thomas Maloney, an unscrupulous, corrupt judge presently serving a federal prison term following convictions in 1993 for racketeering conspiracy, racketeering, extortion under color of light, and obstruction of justice that arose out of an undercover investigation known as "Operation Greylord.." in 1993. While on the bench, Maloney took bribes from criminal defendants in exchange for favorable rulings. *United States v. Maloney,* 71 F.3d 645 (7th Cir. 1995).

3

C 4122

## PROCEDURAL HISTORY

Petitioner took a direct appeal to the Illinois Supreme Court where he argued the following issues: (1) his pre-trial motion to suppress should have been granted where the arrest warrants lacked probable cause; (2) the prosecutor committed prosecutorial misconduct when he made numerous inflammatory arguments at his original trial resulting in unfair prejudice and improperly referred to evidence; (3) the trial court committed error when it questioned one of the State's witnesses; (4) his confessions should have been suppressed because of evidence that he was injured while in custody and he was denied his right to counsel; (5) he was not proven guilty beyond a reasonable doubt of the offense of armed robbery; (6) he was improperly sentenced to three concurrent terms of 60 years for aggravated kidnapping; (7) the prosecutor made improper comments during the aggravation phase of his sentencing hearing; and (8) his convictions should be reversed a new trial ordered on the ground that his right to trial by an impartial jury was violated when the prosecutor exercised peremptory challenges to excuse all of the black prospective jurors.

The Supreme Court affirmed that part of the judgment entered on defendant's convictions for first degree murder, robbery, and aggravated kidnapping. It amended the sentence imposed on each of the convictions of aggravated kidnapping and reduced each to 15 years. Because of improper comments made by the prosecutor (claim 7 above) the Supreme Court vacated petitioner's sentence and remanded the matter to the trial court for a new sentencing hearing. *People v. Murray Hooper*, 133 Ill. 2d 469, 552 N.E.2d 684 (1989).

C 4123

Petitioner thereafter petitioned for a writ of certiorari to the United States Supreme Court. On October 9, 1990, the United States Supreme Court denied his petition. *Hooper v. Illinois*, 498 U.S. 911, 112 L. Ed. 239 (1990).

On June 1, 1993, a jury found again that there were no mitigating factors sufficient to preclude the imposition of the death sentence, and on July 16, 1993, the trial court denied petitioner's motion for a new sentencing hearing and sentenced him to death.

Petitioner thereafter appealed his sentence of death with the Illinois Supreme Court alleging numerous errors with his sentencing hearing. The Supreme Court reviewed the entire record and affirmed the judgment of the trial court imposing a death sentence. *People v. Murray Hooper*, 172 Ill. 2d 64, 665 N.E.2d 1190 (1996).

Petitioner next filed for a writ of certiorari to the United States Supreme Court. On November 4, 1996, the United States Supreme Court denied his petition. *Hooper v. Illinois*, 519 U.S. 689, 136 L. Ed. 2d 311 (1996).

On December 21, 1995, while his Supreme Court petitions were pending, petitioner filed his initial *pro se* petition for post-conviction relief and motion for appointment of counsel. In that initial petition, petitioner assigned 37 trial and appellate errors for review. On May 1, 1998, the initial *pro se* petition was denied *sua sponte* by Judge John J. Mannion. Petitioner filed a timely notice of appeal challenging the post-conviction court's ruling on May 18, 1998.

In December 1999, the Illinois Supreme Court filed its order granting the motion by the appellee for further post-conviction proceedings in compliance with *People v. Bounds*, 182 Ill. 2d 1 (1998). The Supreme Court remanded to the Circuit Court of Cook

5

C 4124

County for further post-conviction proceedings in compliance with its decision in *Bounds*.

On June 15, 2004, the post-conviction court granted the State's Motion to Dismiss the Defendant's post-conviction petition. Petitioner filed his appeal. On February 24, 2006, the Supreme Court allowed Appellate's Motion for Summary Remand with Directions that the cause be transferred to another judge.

## ANALYSIS

**Second Stage Dismissal**

As indicated above, the instant procedure was commenced on December 21, 1995 and was thereafter supplemented on several occasions, the most recent of which was filed on May 15, 2006. In turn, respondent filed a motion to dismiss pursuant to Section 5 of the Post-Conviction Hearing Act. 725 ILCS 5/122-5 (West 2006). Following arguments of counsel, this court took the matter under advisement.

At the outset, it is universally recognized that a post-conviction proceeding is not a direct appeal, but rather is a collateral attack on a prior judgment. *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Under the Act, a petitioner enjoys no entitlement to an evidentiary hearing. *People v. Cloutier*, 191 Ill. 2d 392, 397 (2000). A hearing is required, however, when the petitioner makes a substantial showing, based on the record and supportive affidavits, that a violation of his constitutional rights occurred at trial or sentencing. *People v. Johnson*, 191 Ill. 2d 257, 268 (2000).

**Preliminary Issues**

**A.    Statute of Limitations**

C 4125

The State argues generally that the post-conviction petition should be barred because the filing is outside of the statute of limitations. Therefore, this Court should not consider the claims therein. Petitioner, in his Reply, presents helpful chronological detail to aid this Court in resolving the issue whether the post-conviction petition should be time-barred. The following facts applied to legal principles resolves this issue in petitioner's favor.

As stated *supra*, a jury convicted petitioner on September 23, 1981. At that time, the prevailing post-conviction statute demanded that petitions be filed within 20 years after final judgment. In January 1, 1984, an amendment to Section 122--1 shortened the time limitation from 20 years to 10 years following the rendition of judgment, unless the petitioner could allege facts reflecting the delay was not due to his culpable negligence. *See* Ill. Rev. Stat. ch. 38, para. 122--1 (1984 Supp.). The Illinois Supreme Court in a challenge to the retroactive application of this statute found that the statute of limitations, historically classified as procedural in character, was to be given retroactive effect. *People v. Bates*, 124 Ill. 2d 81, 85 (1988). In the wake of *Bates*, petitioner had until September 23, 1991 to file his initial post-conviction petition.

On December 7, 1989, the Illinois Supreme Court vacated petitioner's sentence and remanded for resentencing. On January 1, 1992, the Act was amended again, establishing a new time period for criminal defendants to file their post-conviction petitions. That version of the Act instructed criminal defendants to file their post-conviction petitions on or before one of three dates: three years after date of conviction, six months after the issuance of Illinois Supreme Court opinion, or six months after denial of certiorari, whichever was latest.

7

C 4126

Meanwhile, on July 16, 1993, the trial court again imposed a sentence of death for petitioner's crimes. Petitioner thereafter appealed directly to the Supreme Court. Certiorari was eventually denied on November 4, 1996. Petitioner filed this post-conviction petition on December 21, 1995.[1] Because petitioner was awaiting decision in the Supreme Court, he was under no obligation pursuant to the then-existing law to file his post-conviction petition. His filing was made in time if the Court can find that he was not "convicted" between the time the Supreme Court vacated and remanded his original sentence in 1989 until he was sentenced to death for a second time in 1993.

The remand of petitioner's sentence tolled the statute of limitations for the purposes of filing post-conviction petitions because technically petitioner no longer stood convicted under the statute. A recent Illinois Supreme Court case confirms that the statute of limitations for filing post-conviction petitions begins to run after the resentencing of petitioner where a remand occurs.

In *People v. Hager*, 202 Ill. 2d 143 (2002), the Court considered the exact issue. That petitioner, who was convicted of five counts of aggravated criminal sexual assault, was originally sentenced to serve consecutive 40-year prison terms. *Hager*, 202 Ill. 2d at 145. On January 18, 1994, the appellate court affirmed defendant's convictions but remanded the cause to the circuit court for resentencing. *Id.* On April 15, 1995, the circuit court resentenced Hager. Hager later, on October 17, 1997, filed his initial post-conviction petition. The circuit court summarily dismissed his petition as without merit. The appellate court later affirmed the decision of the circuit court, but also further reasoned that his petition was not timely-filed. In finding that the appellate court erred in

---

[1] The Act was set for a new amendment, January 1, 1996, which required post-conviction petitions to become due "within 45 days after the filing of the brief" in the resentencing appeal. Because petitioner had filed previous to that date, he is in compliance with that amendment to the act.

'C 4127

its affirmance, the Supreme Court reiterated the rule set forth in *People v. Woods*, 193 Ill. 2d 483 (2000) that the word "conviction" is a term of art which means a final judgment including both a conviction *and* a sentence. *Hager*, 202 Ill. 2d at 149, *quoting Woods*, 193 Ill. 2d at 488. The *Hager* Court further opined that on the date the appellate court vacated defendant's sentences he longer stood "convicted" for purposes of the Post-Conviction Hearing Act. *Id.* For the same reasons expressed in *Hager*, the statute of limitations does not bar petitioner's substantive allegations in the instant case.

## B.    COMPENSATORY BIAS (CLAIMS I & II)

Petitioner argues his conviction should be reversed because the presiding judge, Thomas Maloney, practiced compensatory bias against him at all stages of the proceedings. Specifically, petitioner contends Maloney issued discretionary rulings in favor of the State both during his 1981 trial and during the *Batson* hearing in 1987 to conceal the fact that he was accepting bribes in other cases. In addition, petitioner asserts that if a bribe was not offered or taken in a case, Maloney would prejudice the defendant who did not bribe him in an attempt to "camouflage" his actions. This activity was labeled "compensatory bias" by the federal courts when petitioner's co-defendants, William Bracy and Roger Collins, filed petitions arguing this same issue.

To establish a claim of judicial bias, two requirements must be met: (1) the petitioner must establish a nexus between the activities being investigated and the trial judge's conduct at trial; and (2) the petitioner must allege and establish actual bias resulting from the trial judge's extrajudicial conduct. See *People v. Titone,* 151 Ill. 2d 19, 30 (1992) *citing Commonwealth of Pennsylvania v. Shaw* 398 Pa. Super. 341 (1990). In

9

C 4128

*Shaw,* the court had to determine whether a defendant was denied due process of law where, in a nonjury trial in which he was found guilty, the trial judge failed to disclose that he demanded and/or accepted bribes from other defendants at or near the time of the defendant's trial. Applying the test for judicial bias, the Shaw court stated:

> "Appellant's claim of bias, *i.e.* that because the trial judge 'solicited and received bribes' in some cases, he had to convict without regard to guilt or innocence in other cases to 'show…that there is a real need for the bribe to obtain a favorable result,' us wholly unsubstantiated in the record before this Court on appeal. Applellant's mere speculation is not sufficient. [citation omitted]. Moreover, no ruling of the trial judge and no specific event or incident which occurred during the trial gave rise to any question as to the trial judge's objectivity or to the propriety of his rulings. [citation omitted]. As appellant has been unable to establish actual prejudice resulting from the trial judge's extrajudicial conduct, this claim fails." *Commonwealth of Pennsylvania v. Shaw* 398 Pa. Super. 341, 343 (1990) *quoted in People v. Titone*, 151 Ill. 2d 19, 30-31 (1992).

In proceedings where Judge Maloney's conduct was the central issue, courts have consistently reaffirmed the requirement that the compensatory bias must be shown "in petitioner's own case." *Bracy v. Gramley,* 520 U.S. 899, 906 (1997). In the federal court proceedings involving petitioner's codefendants, the Seventh Circuit clarified the Supreme Court's holding stating that to prove compensatory bias, petitioners "Bracy and Collins have the heavy burden of showing actual bias," rather than the more favorable burden of showing the mere appearance of bias. *Id.* at 411. The Circuit emphasized "the fact that Maloney was so exceedingly corrupt does not support a per se finding that every case over which he presided was infected." *Bracy v. Schomig,* F.3d 406, 410 (7th Cir. 2002)(*en banc*).

This Court will now apply the above rationale to the facts of petitioner's case.

**CLAIM I**

C 4129

**Petitioner's Due Process Right to a Fair Trial Was Violated Where Judge Maloney Practiced Compensatory Bias**

### 1. Compensatory Bias at the Trial in 1981

In his post-conviction petition, petitioner offers the following support for his compensatory bias allegation at his trial: (1) that Maloney boasted about his harsh dispositions in prominent (aka "heater" cases), including the petitioner's cases at his Federal Sentencing hearing, (2) that the Hooper, Bracy, and Collins prosecution was one of the hottest of the "heater" cases, (3) that petitioner's case occurred right after Judge Maloney took bribes in other cases, (4) Judge Maloney had ties to organized crime, (5) documented instances of Judge Maloney's use of compensatory bias in other cases, and (6) Judge Maloney's pro-prosecution rulings and conduct at petitioner's trial.

After reviewing the pleadings from both parties and the oral arguments advanced at the October 18, 2006 hearing, petitioner has presented no direct evidence that Maloney engaged in compensatory bias in petitioner's case. The burden is on petitioner to establish actual bias in their case – not the appearance of bias. The fact that Judge Maloney was convicted of taking bribes in unrelated cases cannot call into question the facts and verdict in the instant case. To do so would call into question all of Maloney's verdicts, something previous courts have declined to do. As the Seventh Circuit stated, "the Supreme Court did not adopt and would not countenance a rule that compensatory bias can be presumed from the fact that a judge has accepted bribes in some cases." *Bracy v. Schomig,* F.3d 406, 421 (7th Cir. 2002)(*en banc*).

Petitioner urges that Maloney's criminal conduct in other cases entitles him to a new trial. *People v. Titone,* 151 Ill. 2d, 19 (1992); *Bracy v. Schomig*, 286 F.3d 406 (7th Cir. 2002). However, petitioner's case is distinguishable from those cases. Petitioner

11

C 4130

states that defendant Titone's conviction was ultimately reversed in post-conviction proceedings on July 25, 1997. See Pet. Ex 82. However, as the State indicates, the defendant in *Titone* was convicted following a bench trial where Maloney accepted a bribe, but returned the money after discovering he was under federal investigation. Clearly, evidence existed that called into question Maloney's objectivity in that case.

Unlike *Titone* or *Shaw*, petitioner was convicted following a *jury* trial. A jury concluded that there was sufficient evidence establishing beyond a reasonable doubt that petitioner was guilty of the crimes charged. Petitioner's conviction was affirmed on appeal. Although the Illinois Supreme vacated petitioner's original death sentence due to improper arguments by the prosecution during the sentencing phase, petitioner was subsequently sentenced to death by another independent jury. That reversal was not based on comments or conduct by Maloney. In fact, Maloney sustained several defense objections to the State's arguments during the original sentencing phase. See *People v. Hooper*, 133 Ill. 2d 496, 500 (1989).

Petitioner also argues that Judge Maloney practiced compensatory bias in the sentencing phases of petitioner's codefendants, Bracy and Collins, and therefore, he practiced compensatory bias in petitioner's case. *Bracy v. Schomig*, 286 F.3d 406 (7th Cir. 2002). The district court found that despite "overwhelming" evidence of guilt, the interests of justice required a new sentencing proceeding due to the potential that compensatory bias played a part in Maloney's ruling since it was the only phase where Maloney exercised any discretion. *Bracy* and *Collins* 79 F. Supp. 2d 898 (N.D. 1999). Although the Seventh Circuit, *en banc,* affirmed the district court's ruling regarding sentencing, the Circuit affirmed the codefendants convictions.

12

C 4131

The State points out that the cases involving Bracy and Collins are distinguishable from petitioner's case. In ruling that Bracy and Collins were entitled to discovery on his claim of compensatory bias, the Supreme Court emphasized that in that case, Maloney had appointed a former associate of his, Robert McDonnell, as Bracy's trial counsel. The Court reasoned that McDonnell "might have been appointed with the understanding that he would not object to, or interfere with, a prompt trial, so that petitioner's case could be tried before, and camouflage the bribe negotiations," in a contemporaneous case before Maloney. *Bracy v. Schomig,* F.3d 406, 420 (7th Cir. 2002)(*en banc*) *citing Bracy v. Gramley,* 520 U.S. 899, 908 (1997). Petitioner makes no such specific allegation here.

Moreover, petitioner's original sentence under Maloney was vacated by the Illinois Supreme Court during his direct appeal. See *People v. Hooper*, 133 Ill. 2d 496 (1989). Petitioner was resentenced by Judge John J. Mannion in 1993. Therefore, no remaining phase of petitioner's proceeding exists where Judge Maloney exercised his discretion.

Petitioner's assertions do not establish a sufficient factual nexus between his conduct and actual prejudice in petitioner's case. Petitioner's claim is based on pure speculation and contains no direct evidence that Judge Maloney engaged in compensatory bias in petitioner's case. Such speculation is insufficient to merit a reversal of his conviction or a new trial. Therefore, petitioner has failed to present evidence that would support a substantial finding of a constitutional violation.

### 2. **Compensatory Bias During the *Batson* Proceeding in 1987**

As support for his allegation of compensatory bias at the *Batson* hearing, petitioner argues (1) Maloney's racketeering continued after petitioner 1981 trial, (2)

13

C 4132

Maloney's need to conceal his bribe-taking increased after 1981 when he discovered he was being investigated, and (3) Maloney's conduct at the *Batson* hearing is evidence of his compensatory bias.

Again, petitioner is asking the Court to infer based on circumstances that Maloney practiced compensatory bias at his *Batson* hearing. These inferences are insufficient to establish that Maloney engaged in compensatory bias. Petitioner's suggestion that Maloney denied the *Batson* claim to hide his previous acts of corruption is pure speculation. As the State argues, it would be just as reasonable to conclude that at that time, Maloney's behavior and conduct would be intently unbiased. Additionally, petitioner cannot establish when Maloney discovered he was being investigated. Therefore, this Court will not accept petitioner's assumption that because Maloney knew he was being investigated, he must have felt increased pressure to cover up his prior actions, and thus practiced compensatory bias at petitioner's *Batson* hearing.

Furthermore, petitioner cannot establish compensatory bias simply by arguing that Maloney's conduct and rulings during his *Batson* hearing were harsh and unfair. If Maloney's conduct or rulings violated the rules of evidence or petitioner's constitutional rights, they would have been overturned on appeal. Naturally, petitioner's opinion of those rulings was that they were unfair. However, an objective review of those rulings results in an entirely different interpretation – that they were based on the evidence. Thus, petitioner's assertion that Maloney's rulings and conduct are evidence of his compensatory bias fails to establish a substantial finding of a constitutional violation.

## CLAIM II

14

C 4133

### Petitioner's Due Process Rights to a Fair Trial were Violated by Maloney's Criminal Conduct

Petitioner contends Maloney's conduct as a racketeer deprived him of his right to a fair trial. He cites numerous opinions critical of Maloney's conduct and argues that due to Maloney's extensive criminal conduct, a presumption exists petitioner did not receive a fair trial. *See Amended Pet.* para. 171. This Court agrees with the descriptions of Maloney's abhorrent conduct in the opinions set forth by the Seventh Circuit, the Illinois Courts of Appeals, the Illinois Supreme Court, and the United States Supreme Court. However, petitioner's allegation that Maloney's racketeering deprived him of a fair trial is precisely the sort of speculative blanket statement the Supreme Court and the Seventh Circuit have declared insufficient to establish compensatory bias. See Claim I, *supra.* As the Seventh Circuit noted "the Supreme Court did not adopt and would not countenance a rule that compensatory bias can be presumed from the fact that a judge has accepted bribes in some cases." *Bracy v. Schomig,* F.3d 406, 421 (7th Cir. 2002)(*en banc*). Accordingly, petitioner has not alleged sufficient facts that would support his allegation of compensatory bias.

### C. RES JUDICATA/FOREFITURE (CLAIMS III, IV, V, VI)

In Illinois, the law is clear: "determinations of the reviewing court on direct appeal are *res judicata* as to issues actually decided and issues that could have been raised on direct appeal but were not are waived." *People v. Coleman,* 168 Ill. 2d 509, 522 (1995). In an initial post-conviction proceeding, the common law doctrines of *res judicata* and waiver operate to bar the raising of claims that were or could have been adjudicated on direct appeal. *People v. Blair,* 215 Ill. 2d 427, 443 (2005). The doctrine

of *res judicata* bars consideration of issues that were previously raised and decided on direct appeal. *Id.* As to waiver, the Illinois Supreme Court used the term "forfeited" rather than "waived" to define issues that could have been raised, but were not, and are therefore barred.[2] Dismissal of post-conviction petitions based on the doctrines of waiver and *res judicata* has been held appropriate. *People v. Blair,* 215 Ill. 2d 427 (2005); *People v. Rogers,* 197 Ill. 2d 216, 221, 756 N.E.2d 831 (2001).

Notably, there are exceptions to the doctrines of *res judicata and* forfeiture which may allow otherwise barred claims to proceed. For example, where fundamental fairness so requires, where the alleged forfeiture stems from the incompetence of appellate counsel, or where facts relating to the claim do not appear on the face of the original appellate record, strict application of those doctrines may be relaxed. *People v. Blair*, 215 Ill. 2d 427, 450-451 (2005); *People v. Munson*, 206 Ill. 2d 104, 118 (2002).

Petitioner argues that as a matter of fundamental fairness, this Court should decline to strictly apply the doctrines of *res judicata* and forefiture based on the discovery of facts not known at the time of the first direct appeal. Specifically, petitioner alleges that compensatory bias and racial bias on the part of Maloney require this Court to review petitioner's claims *de novo*.

## CLAIM III

### Petitioner is Entitled to a New Trial Based on a *Batson* Violation

---

[2] The *Blair* court referred to the United States Supreme Court's definitions of "waiver" and "forfeiture" in *United States v. Olano*, 507 U.S. 725, 123 L. Ed. 2d 508, 113 S. Ct. 1770 (1993). The Supreme Court stated, "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of the right, waiver is the 'intentional relinquishment or abandonment of a known right.'" United States v. Olano, 507 U.S. 725, 123 L. Ed. 2d 508, 113 S. Ct. 1770 (1993). This Court will adopt the term "forfeited" to refer to claims that could have been raised, but were not, and are now barred.

Petitioner claims he is entitled to a new trial due to racial discrimination in the selection of his jury where the State failed to offer any reason for one of its peremptory challenges and its proffered excuses for its other challenges against African-Americans were mere pretexts for race-based discrimination. The State responds that this issue was litigated and ruled on by the Illinois Supreme Court in 1989 and therefore, this claim is barred by *res judicata. People v. Hooper*, 133 Ill. 2d 469 (1989).

Petitioner argues that the *res judicata* doctrine should not be applied due to Maloney's alleged compensatory bias. Petitioner claims that *de novo* review of the record establishes a *Batson* violation which requires reversal of petitioner's conviction, and that newly discovered evidence suggesting Maloney was racially biased rendered him unfit to adjudicate the *Batson* claim.

In his first direct appeal, petitioner argued his convictions should be reversed and a new trial ordered because his right to trial by an impartial jury was violated when the State exercised peremptory challenges to excuse all five of the prospective black jurors. *People v. Hooper*, 133 Ill. 2d 469 (1989). He now makes, in the context of Maloney's compensatory bias, the exact same argument in his post-conviction petition. Nonetheless, the mere rephrasing of the claim does not preclude the application of *res judicata*, Whether *res judicata* should be relaxed turns on whether Maloney's alleged compensatory and/or racial bias was so fundamentally unfair to petitioner that he is entitled to an evidentiary hearing.

As discussed above, petitioner failed to establish a sufficient nexus between Maloney's conduct in other bribery cases and his conduct in petitioner's trial to support his claim of judicial bias. Petitioner's allegation that because Maloney solicited and

17

C 4136

received bribes in some cases his racial bias infected his handling of the *Batson* hearing in this case does not warrant an evidentiary hearing on his post-conviction. Maloney's ruling on the *Batson* issue was closely scrutinized by the Illinois Supreme Court. The Supreme Court found Maloney did not err in finding that petitioner failed to establish a *prima facie* case of racial discrimination in the State's use of its peremptory challenges. The claim is barred by the doctrine of *res judicata.*

Moreover, Petitioner's claim fails on its merits. In its opinion, the Illinois Supreme Court accepted the State's race-neutral explanations for its use of peremptory challenges. This Court will not substitute its judgment for that of the Illinois Supreme Court which found that petitioner was not entitled to a reversal of his conviction and a new trial based on a *Batson* violation.

Additionally, petitioner's allegation that Maloney's racial bias rendered him unfit to adjudicate the *Batson* issue due to racial bias is without merit and does not entitle him to a new *Batson* hearing. At his direct appeal, petitioner previously argued that Judge Maloney manifested a bias against the *Batson* remedy and against the defendant. *People v. Hooper*, 133 Ill. 2d 469, 512 (1989). The Illinois Supreme Court acknowledged that although the "trial judge more than once and inappropriately indicated his attitude toward *Batson* and other subjects. That the judge disagrees with the holding in *Batson,* however, does not mean that he was unwilling or unable to apply it to the case before him." *Id.* The court further stated, "The mere expression by a judge of an opinion or the fact that a judge has strong feelings on an issue does not amount to bias or prejudice. There must be active personal animosity, hostility, ill will, or distrust towards the defendant." *Id.* citing *People v. Vance*, 76 Ill. 2d 171, 181-82 (1979). Likewise, both the public and private

18

statements cited by petitioner attempting to demonstrate Maloney's racial bias do not present sufficient evidence that Judge Maloney was unfit to adjudicate a *Batson* claim in this case. Therefore, in addition to being barred by *res judicata,* petitioner has failed to make a substantial showing of a constitutional violation based on racial discrimination in the selection of his jury.

**CLAIM IV**

**Petitioner's Statements Should Not Have Been Admitted Because They Were Obtained in Violation of His Sixth Amendment Right to Counsel**

Petitioner contends his constitutional rights were violated by the admission of his confession taken during custodial interrogation where the statements were taken after he invoked his sixth amendment right to counsel. *See Amended Pet.* Claim IV. The State responds that this claim is waived as it was not raised in the trial court.

Petitioner previously sought relief on this claim through his direct appeal. The appellate court stated,

> "The defendant also says that his confession should be suppressed on the ground that his right to counsel under the sixth amendment…was violated. (U.S. Const., amend. VI.). As the defendant acknowledges, this question was not raised in the trial court and it has been waived for purposes of review."
>
> *People v. Hooper*, 133 Ill. 2d 469, 497 (1989).

Clearly, the Illinois Supreme Court found Petitioner waived his sixth amendment violation claim. Petitioner argues that, as a result of compensatory bias, fundamental fairness requires relaxation of the *res judicata* and waiver doctrines. However, even assuming the truth of Petitioner's allegations, Petitioner failed to preserve his sixth amendment claim for appellate review. Therefore, Petitioner's sixth amendment violation claim is waived.

C 4138

## CLAIM V

**Petitioner's Due Process Rights Under *Brady v. Maryland* Were Violated When the State Failed to Disclose Evidence Supporting his Sixth Amendment Violation Claim**

Petitioner contends his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), the U.S. Const., Amend XIV, and the Ill. Const., 1979, Art. 1 & 2. were violated when the State intentionally withheld evidence probative of his claim that his sixth amendment right to counsel was violated during custodial interrogations. Specifically, petitioner claims that the State was aware that at the time of his arrest, petitioner had an attorney, Michael Green, and that petitioner had a plan in place to contact his attorney if and when he was arrested. Petitioner alleges the State kept this information secret until after petitioner was convicted and sentenced to death. The State argues that this claim is barred by the doctrines of *res judicata* or waiver.

Issues that could have been raised on direct appeal, but were not, are forfeited. *People v. Blair,* 215 Ill. 2d 427 (2005). Dismissal of post-conviction petitions based on the doctrines of waiver and *res judicata* has been held appropriate. *People v. Blair,* 2005 Ill. LEXIS 948 (2005); *People v. Rogers,* 197 Ill. 2d 216, 221, 756 N.E.2d 831 (2001). Petitioner did not assert this claim in his direct appeal. Furthermore, petitioner has failed to allege any new facts not available at the time that would warrant the relaxation of the waiver doctrine. In fact, petitioner's claim is based on allegations and facts that were the subject of a suppression hearing and therefore, known at the time. Therefore, since petitioner failed to raise this issue on appellate review, his claim of a Brady violation is forfeited by the doctrine of waiver.

Moreover, this claim lacks merit. Clearly, due process prohibits the suppression by the State of information or materials favorable to the petitioner and material to guilt or

20

C 4139

punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97 (1963); *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 493, 105 S. Ct. 3375, 3383 (1985). "Moreover, the disclosure obligation applies to impeachment evidence as well." *People v. Pecoraro*, 175 Ill. 2d 294, 305, 677 N.E.2d 875, 881 (1997) (citations omitted).

The standard for materiality under *Brady* is whether there is a reasonable probability that disclosure of the evidence to the defense would have altered the outcome of the proceeding. *People v. Sanchez*, 169 Ill. 2d 472, 486, 662 N.E.2d 1199, 1207 (1996); *Bagley*, 473 U.S. at 682, 87 L. Ed. 2d at 494, 105 S. Ct. at 3383. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley.*

In the instant case, petitioner alleges the State recovered attorney Michael Green's business card from accomplice Morris Nellum and that the State was aware that petitioner told Nellum that "if we got in trouble, we use [Michael Green] for an attorney." See Pet. Para 275.[3] Petitioner asserts this business card and his statements to Nellum show that he had a plan to contact an attorney upon his arrest. Petitioner urges that this evidence corroborates his assertion that he requested an attorney from the initial time he was arrested at his apartment, and therefore, all subsequent statements made by him should have been suppressed because they were obtained in violation of his right to counsel.

Petitioner's claim is without merit. He has clearly failed to allege sufficient facts to suggest a "reasonable probability" that the recovery of Michael Green's business card from Nellum and petitioner's statements to Nellum would have altered the outcome of

---

[3] Petitioner's other statements to Nellum are set forth in his petition. See Pet. para 275.

C 4140

the case.   The recovery of the business card from petitioner's accomplice and his indication that if they were to get into trouble, they would use that attorney do not suggest petitioner would have requested counsel every time he was arrested.  Particularly, it does not tend to show that petitioner asserted his 5th amendment right to counsel in this instance.  Moreover, when petitioner requested a lawyer while being interviewed at Area One by Assistant State's Attorney Hyman, he did not specifically ask for Michael Green. When asked if he would like a lawyer, he stated "Yes, I would like one if I could get one." (State's Supp. Mot to Dismiss, pg 8; Def. Exhibit #45).  His failure to request Michael Green suggests petitioner did not have a plan to contact an attorney when he was arrested, or he would have asked for Michael Green.  Based on the above discussion, it is not reasonably probable to assume that the disclosure of attorney Michael Green's business card and petitioner's statements to Nellum would have altered the outcome of the case.     Therefore, petitioner failed to make a substantial showing that his constitutional rights were violated.

## CLAIM VI

### Petitioner's Constitutional Rights Were Violated by the Admission of Statements That Were Obtained Through Police Coercion

Petitioner also contends that his constitutional rights were violated by the admission of inculpatory statements taken during custodial interrogation where the statements were the product of police coercion. See Pet. Claim VI. The State responds that this claim is barred by *res judicata* as it was raised in petitioner's direct appeal. Petitioner argues that, as a result of compensatory bias, fundamental fairness requires relaxation of the *res judicata* doctrine.

C 4441

Petitioner previously raised this claim in his direct appeal. The Illinois Supreme Court thoroughly recounted the evidence and testimony by the defendant and stated "it was not established that the defendant was injured while in police custody." *People v. Hooper*, 133 Ill. 2d 469, 496-97 (1989). Petitioner's allegations of compensatory bias, even if true, do not change the fact that petitioner did not establish that his injuries occurred while in police custody. Therefore, his argument that the doctrine of *res judicata* should be relaxed because of those additional allegations must fail. Additionally, as discussed above, Petitioner failed to establish the requisite nexus between Judge Maloney's conduct in specific bribery cases and his conduct in petitioner's trial to support his claim of compensatory bias. Since petitioner raised this claim on direct appeal, it is now barred by the doctrine of *res judicata*. Moreover, petitioner is still unable to establish that his injury occurred while he was in police custody. Therefore, in addition to being barred by *res judicata*, this claim lacks merit.

## B. Ineffective Assistance of Trial Counsel (CLAIMS VII and VIII)

Petitioner asserts that he was denied his constitutional rights to the effective assistance of counsel where his trial counsel failed to call Mr. Hooper to the stand at the hearing on his motion to suppress, and where trial counsel failed to introduce evidence of the arresting officer's prior history with a co-defendant.

In examining petitioner's claims of ineffective assistance of counsel, this court follows the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that but for this deficiency, there is a

23

C 4142

reasonable probability that counsel's performance was prejudicial to the defense. *People v. Hickey*, 204 Ill. 2d 585, 613 (2001). "Prejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Erickson*, 183 Ill. 2d 213, 224 (1998) (citations omitted). A petitioner's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *People v. Morgan*, 187 Ill. 2d 500, 529-30 (1999).

Significantly, effective assistance of counsel in a constitutional sense means competent, not perfect, representation. *People v. Easley*, 192 Ill. 2d 307, 344 (2000). Notably, courts indulge in the strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690 (2001). Moreover, "the fact that another attorney might have pursued a different strategy is not a factor in the competency determination." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) (citing *People v. Hillenbrand*, 121 Ill. 2d 537, 548 (1988)).

Further, counsel's strategic decisions will not be second-guessed. Indeed, to ruminate over the wisdom of counsel's advice is precisely the kind of retrospection proscribed by *Strickland* and its progeny. *See Strickland*, 466 U.S. at 689 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"); *see also People v. Fuller*, 205 Ill. 2d 308, 331 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions).

C-4143

Challenges to trial counsel's representation ordinarily are not cognizable under the Act unless the claim regards a matter outside the trial record. *People v. Britz*, 174 Ill. 2d 163, 178-79 (1996); *People v. Coleman*, 267 Ill. App. 3d 895, 898-99 (1st Dist. 1994). In the instant matter, petitioner's ineffectiveness claims regarding are not contained in the trial record. Therefore, both claims fall within the purview of the Act and, accordingly, the court may consider them.

## CLAIM VII

## Ineffective Assistance of Trial Counsel

### 1. Trial Counsel's Failure to Adequately Present *Miranda* Violation In Motion to Suppress

Petitioner first claims that trial counsel was ineffective when counsel failed to call petitioner to testify in his motion to suppress when "Mr. Hooper was willing and able to testify to the necessary facts in support of his *Miranda-Edwards* and police brutality claims," and where counsel failed to introduce medical records to corroborate the same. He argues that the trial court, without petitioner's testimony as to his invocation of counsel to Arizona authorities, "heard no evidence of such invocation, other than the one to prosecutor Hyman which appears at the beginning of the court reported statement. Consequently, there was no evidence which to base a ruling that there was any other invocation other than the court-reported invocation to Hyman." *Superseding Amended Pet. For Post-Conviction Relief*, 86. Petitioner concludes counsel's decision left "scant evidence to support the contention that the statements which preceded the court-reported invocation of counsel were also taken in violation of Mr. Hooper's <u>Miranda</u> and <u>Edwards</u> right to counsel. *Id.* at 87.

25

C 4144

In this case, the Court does not deem the decision not to call petitioner to testify for a pre-trial motion to suppress as objectively unreasonable. The Court notes that petitioner did subsequently testify at trial in his own defense and that pre-trial strategy could have persuaded trial counsel not to put on petitioner. The decision therefore not to call petitioner to testify to a *Miranda* violation when petitioner already put on some evidence in support of that position is a matter of trial strategy. Trial counsel's decision is to be accorded great deference and petitioner's constitutional claim on counsel's decision even when evidence was presented to support the motion to suppress is precisely the type of second-guessing Illinois case law prohibits. This claim regarding the *Miranda* issue is patently frivolous and without merit.

## 2.   Trial Counsel's Failure to Introduce Medical Records Supporting Petitioner's Allegations of Coercion and Police Brutality

Petitioner further claims that trial counsel ought to have subpoenaed medical records which contained information about an injury suffered by petitioner in order to bolster his argument that petitioner's confession was coerced. Petitioner asserts that hospital records "should have been introduced at the hearing on the motion to suppress, but they were not." *Superseding Amended Pet. For Post-Conviction Relief*, 88.

In this case, petitioner has failed to establish the requisite prejudice from the failure to present medical records. "Prejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Erickson*, 183 Ill. 2d 213, 224 (1998) (citations omitted).

The petition itself is devoid of information that would allow the Court to find the result of the proceeding would have been different. Specifically, petitioner has failed to

C 4145

plead when he received these injuries, where he received the injuries, and to provide medical records that would show conclusively that his injuries occurred at or near the time he gave his confessions. If this Court were to speculate further, it might find what the State argues and that is these injuries were sustained previously to any meetings with police and were not the result of police interaction. Regardless, the claim is patently frivolous and without merit. Even assuming his allegations are true, petitioner would not be able to meet the prejudice test because there is independent evidence obtained through the testimony of Morris Nellum sufficient to convict him for his involvement in the triple homicide.

## CLAIM VIII

### Ineffective Assistance for Failure to Introduce Evidence of the Arresting Officer's Prior History with Co-Defendant

Additionally, Petitioner alleges that his counsel was ineffective for failing to put forth evidence at trial of the arresting officer's prior history with co-defendant, Roger Collins. In support of the claim, petitioner states,

> There existed evidence, which trial counsel failed to introduce, which would have shown that the police would stop at nothing to get Roger Collins, including coercion of other witnesses who they believed were also involved, and making promises that they were unlikely to keep. Counsel's failures to introduce this evidence constituted ineffective assistance of counsel.

*Superseding Amended Pet. For Post-Conviction Relief,* 89. Petitioner contends that the failure to introduce evidence of the relationship between his co-defendant and arresting officers, Michael Hoke and Dennis O'Callaghan, allowed the prosecutors to unfairly ridicule Mr. Hooper's testimony. *Id.* at 91.

C 4146

At trial, petitioner testified that the State initially sought him to be a star witness against Roger Collins, a co-defendant. His position is that because the jury did not receive an adequate portrait of the relationship between the arresting officers and his co-defendant they made an unwise credibility determination of him. Petitioner portrays the arresting officers in this petition as hell-bent on obtaining a conviction against Roger Collins, infamous leader of the gang, the "Royal Family", a unit that caused many vicious crimes during the 1970s. He details a series of events where the officers at Area 2 were unable to bring his co-defendant to justice. Then he assumes that the jury, guided with this information, would take the leap with him that not only did the arresting officers beat him, but they also wanted him to be their star witness. *Id.* at 89-91.

Assuming *arguendo* that trial counsel would have been able to put forth credible evidence showing a then-existing vendetta against co-defendant Collins, petitioner's testimony would be ambiguous at best. He desires this Court now believe that, as a matter of law, the result of his conviction would have been different if he was able to present this evidence.

Petitioner's chameleonic positions at trial and in the present post-conviction petition betray his ineffective assistance of counsel claim. His trial testimony and post-conviction allegations are contradictory, vague, and wholly inconsistent. The gist of his stories is that officers first beat him, and then cajoled him with promises in order to testify. Nonetheless, it is simply illogical that police officers would first beat petitioner (albeit subsequent medical records and petitioner's silence to a doctor's questions about his injury tend to show otherwise), and then shift course to make promises in return for petitioner's turn as a "star witness". The police's purported strategy detailed by

28

_C  4147

petitioner is simply absurd. The jury probably asked themselves why on earth a police officer would choose to beat his star witness prior to receiving his acceptance to testify. Obviously, no one would and petitioner's credibility was undermined. Regardless, whichever of the two inconsistent stories (i.e. I was beaten and coerced or cajoled to be the "star witness) petitioner chooses to pursue, the evidence supporting the claim fails to present a substantial constitution deprivation warranting an evidentiary hearing.

## CLAIM IX

### Petitioner's Due Process Rights Under *Brady v. Maryland* Were Violated When the State Failed to Disclose That Thomas Maloney Was Corrupt

Petitioner contends his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), the U.S. Const., Amend XIV, and the Ill. Const., 1979, Art. 1 & 2. were violated when the State failed to disclose information to the defense that Thomas Maloney was a corrupt judge.

Petitioner has failed to plead sufficient facts to support its contention that disclosure of information that Thomas Maloney was a corrupt judge would have been exculpatory evidence as to petitioner. As the State argues, there was no proof at the time of petitioner's trial that Judge Maloney was corrupt. At the time of petitioner's trial, the State's Attorney's Office had only suspicions about Judge Maloney's conduct based on other, unrelated cases. Suspicions alone do not constitute exculpatory evidence, particularly as to this petitioner. Sufficient proof of Judge Maloney's corruption did not exist until after the Federal investigation which ended after the 1987 *Batson* hearing. Therefore, at the time, the State was under no duty to disclose information to petitioner that Judge Maloney may have been corrupt. There is no rule requiring the State to inform defendants that the presiding judge in their case may be corrupt. Such information and

C 4148

statements may turn out to be completely false and slanderous. Therefore, petitioner's claim that the State's failure to disclose its suspicions to defendant constituted a *Brady* violation is without merit. Accordingly, petitioner has failed to make a substantial showing of a *Brady* violation.

## CLAIM X

### Petitioner Was Denied His Due Process Right to a Fair Trial Based on Deceitful Conduct by the Prosecution Prior to Trial

Petitioner next contends that his trial was fundamentally unfair because of the State's gamesmanship and deceit in failing to present a crucial witness to the defense prior to trial. Specifically, petitioner alleges that the prosecution's handling of Morris Nellum rendered his trial unfair. Petitioner describes the prosecutors conduct as tactics amounting to "cat-and-mouse" where the prosecutors hid their key witness and suppressed discoverable reports and other evidence. *Amended Pet. For Post-Conviction Relief*, 99.

Petitioner claims that the prosecutors intentionally kept Morris Nellum as a prisoner of Cook County prosecutor, Gregg Owen. *Id*. at 100. He cites instances in 1981 where Gregg Owen, then an assistant State's Attorney on the Hooper case, refused to allow Arizona prosecutors to speak with Morris Nellum. Presumably, those prosecutors wished to speak with Nellum about his knowledge of petitioner's whereabouts at or around the time he again killed in Arizona. At one time, Owen was hailed before a judge in Maricopa County in Arizona and explained fervently his reasons for not making Nellum available to speak with Arizona prosecutors. Petitioner concludes that Owen's protection of Nellum allowed him "free reign to influence his witness." *Id*. at 101.

C 4149

As stated above, due process prohibits the suppression by the State of information or materials favorable to the petitioner and material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Moreover, the disclosure obligation applies to impeachment evidence as well." *People v. Pecoraro*, 175 Ill. 2d 294, 305 (1997) (citations omitted).

The standard for materiality under *Brady* is whether there is a reasonable probability that disclosure of the evidence to the defense would have altered the outcome of the proceeding. *People v. Sanchez*, 169 Ill. 2d 472, 486 (1996); *Bagley*, 473 U.S. at 682. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley*, 473 U.S. at 682.

Additionally, petitioner argues that the "Prosecution's pattern and practice of deceit is evident in the suppression of evidence of Mr. Hooper's prior relationship with Attorney Michael Green." *Amended Pet. For Post-Conviction Relief*, para. 396. Petitioner attributes the failure of Assistant State's Attorney, Gregg Owen, to turn over Michael Green's business card prior to the suppression hearing as deliberate and results in the destruction of favorable evidence.

This particular claim absolutely befuddles the Court because the logic supporting the inferences drawn is nowhere to be found. He states,

> This information was important in Arizona's prosecution of Robert Cruz, the alleged mastermind of the Arizona crime. The theory against Cruz was that he hired and paid others to commit the murders. He allegedly used Chicago attorney Michael Green to pay Bracey and Hooper in Chicago.

> Gregg Owen, for reasons, known only to him, did everything he could to prevent Michael Green's role in the Arizona crime from coming to light, including hiding the evidence that (1) Morris Nellum had Michael Green's business card, (2) Nellum had received it from Murray Hooper, (3)

C 4150

Nellum gave a statement to an Arizona police officer describing the trip to Green's office, and (3) Mr. Hooper made statements to Nellum regarding contacting Green in the event either one of them was arrested.

*Amended Pet. For Post-Conviction Relief,* paras. 397-98.

Petitioner invites the Court to accept his conclusion that he was denied *Brady* material on the basis of four unsupported suppositions which lead to baseless conclusions. The suppositions include: first, the State's Attorney in Cook County wanted to cover-up alleged crimes occurring in Arizona. Second, the cover-up was concealed by transferring a business card to a key witness. Third, Gregg Owen purposely side-tracked the Arizona trial when he kept the business card's location a secret. Fourth, a business card in the hands of Morris Nellum is evidence **material to petitioner's guilt or innocence**.

Petitioner's *Brady* claim is discounted because he cannot show a substantial showing of a violation of his constitutional rights where he does not provide facts for each of these four suppositions. Further, petitioner's choice to include newspaper editorials detailing the State's Attorney's Office record for mistrials for *Brady* violations occurring in the early 1980s as well as accounts of Owen's relations with the Maricopa County prosecutors is pure conjecture not reasonably tied to matters necessary for resolution in this proceeding.

Further, the Court cannot find a sufficient predicate that the prosecutor's tactics equate to suppression of evidence. The record reflects that the defense attorney assigned to the case had an opportunity to meet with Morris Nellum and interview him prior to trial. Therefore, there can be no reasonable probability that disclosure of the evidence to the defense would have altered the outcome of the proceeding. Morris Nellum was made

C 4151

available to defense and interviewed by the defense. The prosecutor's actions, although unprofessional if taken as true, do not rise to the level of materiality set forth in *Bagley*. Therefore, the Court finds petitioner has not made a substantial showing of a constitional violation.

## CLAIM XI

### Petitioner's Due Process Right to a Fair Trial Based on the Cumulative Effect of the Prosecutorial Misconduct and the Ineffective Assistance of Counsel

Because the Court does not find substantial evidence of a constitutional violation in each of petitioner's previous 10 claims, this claim is rebutted. In the Court's opinion, there can be no cumulative effect requiring an evidentiary hearing in a case such as this where the petition itself is so conclusory as to each individual claim that taken as a whole the claims have little effect on the Court at all that a constitutional deprivation took place as to petitioner.

## CONCLUSION

The State's Motion to Dismiss the Amended Post-Conviction Petition is hereby sustained and the post-conviction petition is denied.

ENTERED:

Honorable Lawrence P. Fox
Judge Presiding
Criminal Division
Cook County, Illinois

ENTERED
JUDGE LAWRENCE P. FOX-0222
DEC 11 2006
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

DATE: 12/11/06

33

C 4152